# EXHIBIT 1

# POLICY ON THE ELIMINATION OF
# WORKPLACE SEXUAL HARASSMENT [*]

Sexual harassment of workers by members of supervision or co-workers should not be tolerated at any workplace organized by the UAW. Nonetheless, UAW members have been victims of sexual harassment. This letter confirms the policy of the International Union that sexual harassment is a serious obstacle to the achievement of full employment opportunity for workers of both sexes. The International Officers, Directors and staff, and local union leadership must commit their efforts to its elimination. Just as the UAW abhors the use of racial or ethnic slurs, the International Union views sexual harassment of any form as an attack on the dignity of the worker who is its victim.

## DEFINITION OF SEXUAL HARASSMENT

Sex-based harassment may be unwanted attention directed to an employee because of their sex. Equal Employment Opportunity Commission (EEOC) guidelines stress that sexual harassment can be verbal abuse as well as unwanted physical contact or offensive pictures, cartoons, slogans or posters displayed in a work area:

> Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment; (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual; or (3) such conduct has the purpose or effect of substantially interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.

Recent court decisions also have recognized that sexual harassment can occur in many different ways. A worker need not be propositioned, touched offensively or harassed by sexual innuendo.

In some sexually charged workplaces, proving the "unwelcomeness" of the harassment activity is complicated by the behavior of the complainant. Mixed signals may indicate the complainant is showing welcomeness, while in fact, the employee's behavior is simply an effort to adjust to the prevailing workplace culture. Under the law, conduct that is initially welcomed, may later become unwelcome. An employee's initial acceptance does not waive their right to complain about later conduct, but the initial acceptance may complicate any attempt to prove unwelcomeness.

There are at least four types of victims of sexual harassment: 1) those who are penalized for refusing the harasser's advances; 2) those whose fear of reprisal or desire for privileges traps them in unwanted sexual relationships; 3) workers who suffer as a result of the harasser's favoritism toward one of them who does submit to sexual advances; and 4) everyone who is required to work in an environment tainted with hostile or offensive language, behavior or visual displays.

---

[*] Source: UAW Administrative Letter, Volume No. 47, November 2, 1998, Letter No. 5 – Sexual Harassment is Grievable.
2016-opeiu494

B-9

## SEXUAL HARASSMENT IS GRIEVABLE

Sexual harassment of a union member by another union member is a matter of grave concern. Some union representatives have been reluctant to write grievances that they feel may be against another member. These kinds of grievances should be written against management, citing the employer's responsibility to maintain an environment free of hostility.

Over the years, EEOC sexual harassment guidelines and the federal courts have established that sexual harassment is sex discrimination and violates Title VII of the 1964 Civil Rights Act, as amended.

In 1986, the U.S. Supreme Court unanimously ruled, in Meritor Savings Bank v. Vinson, that sex-based harassment was unlawful if it created a hostile, abusive, offensive and intimidating work environment even if no sexual favors were sought. This had long been the law concerning hostile environment created due to an employee's national origin, race or religion.

Because sexual harassment may cause a form of hostile work environment, the employer has a legal duty to maintain a work environment free of any form of sexual harassment. Likewise, the local union has an obligation, under law, to require management to promptly investigate such charges and to take immediate corrective action(s) where necessary when sexual harassment is reported.

We advise local unions to file and pursue grievances if the employers fail to meet any part of their legal responsibilities to provide a workplace free of sexual harassment. It is the position of the International Union that sexual harassment may be grieved as a form of sex discrimination under a no-discrimination clause and/or equal application clause where such language exists in the contract.

Sexual harassment may result in other contract violations which could also be grieved, for example, unjust discipline. We believe that sexual harassment can best and most speedily be remedied through the grievance procedure where it is possible to do so under the provisions of the contract. Just as with any other complaint of unfair treatment, grievance handlers have a duty to investigate complaints of sexual harassment. The Union also has a duty to take prompt corrective action where the initial investigation indicates that sexual harassment has occurred. In this context, "prompt corrective action" means writing a grievance.

Proof that sexual harassment has occurred often involves a credibility dispute between the victim and the "harasser". As with any credibility problem, additional evidence, while not necessary, is highly desirable where it is available. Two frequent sources for such outside support in sexual harassment cases are co-workers who witness sexual comments or overtures toward the grievant and present or former co-workers who were also sexually approached by the same harasser. However, the absence of testimony from other victims should not preclude the writing of a grievance.

The Union could also be named as a respondent, along with management, in an EEOC charge or a subsequent lawsuit. Therefore, if the facts show that sexual harassment has occurred, a grievance should be pursued.
2016-opeiu494

## SPECIAL PROTECTION AGAINST SEXUAL HARASSMENT

In addition to grievances on sex discrimination, additional efforts can be made through collective bargaining to eradicate sexual harassment. Since 1979, the problem of sexual harassment has been brought to the bargaining table for frank and open discussion with management. Contractual language was won at Chrysler, Ford, and General Motors which identifies sexual harassment as a subject within the jurisdiction of the National and Local Equal Application Committee. In 1996 letters, these auto employers agreed that discrimination because of sexual orientation could be grieved the same as other types of improper discrimination.

The International Union encourages the development of special complaint provisions to address the problem of sexual harassment, as long as such provisions offer an additional avenue of relief, rather than a substitute for the grievance procedure and can be applied equally to all UAW members.

## PROBATIONARY EMPLOYEES

Probationary employees are frequently the most vulnerable to sexual harassment because they are less aware of their rights and can be intimidated into believing that successful completion of the probationary period depends on their cooperation with a harasser's sexual advances.

For these reasons, it is important that Union leadership be sensitive to the potential problems of sexual harassment encountered by probationary employees and provide the support and information necessary to prevent the probationary employee from becoming a victim.

In some of our contracts, probationary employees have the right to file a grievance based on discrimination. Where it exists, this right may be exercised. As indicated earlier, sexual harassment of even probationary employees may be grieved as a form of sex discrimination. If it is believed that probationary employees may not have their grievances processed, even if they relate to discrimination, they should be referred to the Equal Employment Opportunity Commission (EEOC) or certain state agencies responsible for fair employment practices where they can pursue a claim with those government agencies. In this case, time limits for filing charges must be checked immediately and carefully watched. As with any other sex discrimination charge, copies of any charge should be forwarded to your Regional Director, National Department Director, and the Civil Rights Department of the UAW. If legal advice is needed, they will contact the UAW Legal Department. In some states, harassment victims can file civil lawsuits in state courts. However, a charge with an outside agency or a lawsuit should not be used as a substitute for the grievance procedure if the situation is grievable.

## REMEDIES FOR SEXUAL HARASSMENT

The remedy for a victim of sexual harassment depends on the particular case. For example, if the grievant has suffered economic harm (e.g., demotion, suspension, discharge) due to retaliation

2016-opeiu494

by a supervisor for the employee's failure to submit to the supervisor's advances, the requested remedy should include the standard "make whole" demand. On the other hand, if the grievance is directed at stopping harassment, the requested remedy should at least demand that the supervisor cease and desist the objectionable conduct. It can also request that the supervisor be transferred or disciplined up to and including discharge and that the company fulfill its duty to provide a workplace free of sexual harassment.

Other forms of relief or grievance settlement may include a demand that management print, distribute and post a policy against sexual harassment in the workplace. This demand can also be pursued during contract negotiations.

## CONFIDENTIALITY

A sexual harassment complaint is a very sensitive topic and must be handled with great seriousness and respect for the rights of all concerned. Sometimes workers are too embarrassed or humiliated by the experience to come forward with their complaints. This problem can only be corrected if workers feel assured that the Union will take their complaints seriously and will treat them as confidential as possible.

Of course, the filing of a grievance on sexual harassment means that the complaint will not be totally secret forever. However, the substance of the grievance can determine how much detail must be revealed to management or how prominent a role the individual victim must play. For example, the committeeperson may wish to file a union policy grievance or group grievance when the aim of the grievance is to stop a harasser's conduct and no economic award for an individual grievant is sought. The names of the alleged harasser and victim(s) should be included in the grievance in order for it to be properly investigated. As with any other grievance, supporting facts should be released on a "need to know" basis only and be kept confidential. This will decrease the probability that anyone will file a defamation suit.

## UNEMPLOYMENT COMPENSATION

In the event a member quits a job to avoid sexual harassment, certain state employment security commissions (including Michigan) have ruled that the employee should not be considered a voluntary quit and should not lose unemployment benefits. Workers should be encouraged to appeal any agency denial of unemployment benefits in this situation.

## SEXUAL HARASSMENT BY CO-WORKERS

Unfortunately, sexual harassment is not only practiced by supervision. Co-workers have too often been known to sexually harass other workers. Sexual harassment in the form of remarks, gestures, physical touching, etc., by co-workers can make the victims' work lives miserable and hurt their ability to do their jobs.

Sexual harassment of co-workers runs contrary to the basic Union objective of decent working conditions free of discrimination, as set forth in Article 2 of the Constitution and reaffirmed in innumerable policy statements and actions.

Sexual harassment of a Union member by another Union member is a matter of concern and may be dealt with in the grievance procedure as described elsewhere in the Administrative Letter. Sexual harassment is particularly offensive if it involves a Union official abusing their position of Union authority. These offenses should be called to the attention of the Regional Office and the International Union for remedy.

Local leadership should also assist the International Union in educating our membership on this problem. Sexual harassment violates the fundamental principles of fairness and equality for which the Union has fought so hard.

## ASSISTANCE

For additional information on the problem of sexual harassment and ways to combat it, contact the appropriate International Representative from your Region who will contact the Civil Rights Department of the International Union, if assistance is needed.

As far back as February 1951, the UAW issued an Administrative Letter on how to assure members of a workplace free of sex discrimination. Until sexual harassment has been eliminated, we can never meet this goal.

# EXHIBIT 2

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 471-2019-03796 |

Michigan Department Of Civil Rights and EEOC
*State or local Agency, if any*

**Name** (Indicate Mr., Ms., Mrs.): Mrs. Patricia G. Morris-Gibson
**Home Phone** (Incl. Area Code): (734) 992-4937
**Date of Birth**:

**Street Address**: 13100 Torry Pines Court, Taylor, MI 48180

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

**Name**: INTERNATIONAL UNITED AUTO WORKERS (UAW)
**No. Employees, Members**: 201 - 500
**Phone No.**:
**Street Address**: 8000 East Jefferson Ave, Detroit, MI 48214

**DISCRIMINATION BASED ON** (Check appropriate box(es).)

☐ RACE ☐ COLOR ☒ SEX ☐ RELIGION ☐ NATIONAL ORIGIN
☒ RETALIATION ☐ AGE ☒ DISABILITY ☐ GENETIC INFORMATION
☐ OTHER (Specify)

**DATE(S) DISCRIMINATION TOOK PLACE**
Earliest: 10-01-2018
Latest: 07-02-2019
☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I began working for the above-named employer in 2008. I currently employed as an International Service Representative.

Throughout my employment, I have been subjected to sexual harassment by the Assistant Director of Technical Office Professionals. Most recently, in October of 2018 I was called into a meeting with the Assistant Director and the Former Director of Technical Office Professionals, and Servicing Representative. During the meeting, I was asked questions regarding sexual harassment, specifically about the incident when the Assistant Director was observed by, the President of Local 2256, kissing me on the side of my mouth. I was very uncomfortable, humiliated, and embarrassed. I was off on medical leave of absence. I was sent to an I.M.E. on February 28, 2019. I return to work on March 11, 2019. I was further subjected to intimidation and forced to continue work with the harasser. I requested my personnel file and copy of the I.M.E. The Respondent conducted an internal investigation and the Assistant Director admitted to subjecting me to sexual harassment. The Office of the President took over control of the investigation, to no avail. I was told to remain professional and further incidents may lead to disciplinary action for the harasser.

I believe that I have been subjected to sexual harassment based on my sex (female) and in retaliation I was subjected to an Impressible Medical Examination, further harassment, and intimidation, in violation of Title VII of the Civil Rights Act of 1964, as amended.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

Date: Jul 02, 2019
Charging Party Signature: [signed]

NOTARY – When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT: [signed]

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year): Angelique Morey 7/2/19

# EXHIBIT 3

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| To: Patricia G. Morris-Gibson<br>13100 Torry Pines Court<br>Taylor, MI 48180 | From: Detroit Field Office<br>477 Michigan Avenue<br>Room 865<br>Detroit, MI 48226 |
|---|---|

☐ On behalf of person(s) aggrieved whose identity is
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 471-2019-03796 | Angelique M. Moreno,<br>Investigator | (313) 226-2365 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed **WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

Enclosures(s)

Michelle Eisele,
District Director

05-02-2020
*(Date Mailed)*

cc: **LaChandra White**
Director
**UAW INTERNATIONAL**
8000 E. Jefferson Ave.
Detroit, MI 48214

Enclosure with EEOC
Form 161 (11/16)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** -- **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge within 90 days of the date you receive this Notice. Therefore, you should keep a record of this date. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed within 90 days of the date this Notice was *mailed* to you (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS** -- **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred more than 2 years (3 years) before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 – in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION** -- **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE** -- **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, please make your review request within 6 months of this Notice. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):** The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

**If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.**

"**Actual**" disability or a "**record of**" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):

- **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.
- In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), "**major life activities**" now include the operation of major bodily functions, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.
- **Only one major life activity need be substantially limited.**
- With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.
- An impairment that is "**episodic**" (e.g., epilepsy, depression, multiple sclerosis) or "**in remission**" (e.g., cancer) is a disability if it **would be substantially limiting when active.**
- An impairment **may be substantially limiting** even though it lasts or is expected to last **fewer than six months.**

"**Regarded as**" coverage:
- An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).
- "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
- The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.
- A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.