UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICIA MORRIS-GIBSON,

            Plaintiff,

v.

THE INTERNATIONAL UNION,
UNITED AUTOMOBILE,
AEROSPACE AND AGRICULTURAL
IMPLEMENT WORKERS OF
AMERICA (UAW), et al.,

            Defendants.

Case No. 2:20-cv-11346

Hon. Mark A. Goldsmith

Mag. Judge Anthony P. Patti

---

## DEFENDANT UAW'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT

Defendant International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America ("UAW") respectfully moves the Court, pursuant to Rule 56(a) of the Federal Rules of Civil Procedure and Section II.C. of the Case Management and Scheduling Order, ECF No. 24, PageID.167-68, for summary judgment, or, in the alternative, for partial summary judgment. The grounds for this motion are more fully set forth in the accompanying Defendant UAW's Brief In Support of its Motion for Summary Judgment, or, In the Alternative, for Partial Summary Judgment.

In connection with this Motion for Summary Judgment, or In the Alternative, for Partial Summary Judgment, undersigned counsel certifies that that counsel personally spoke to, or met with, opposing counsel, explaining the nature of the relief to be sought by way of this motion and seeking concurrence in the relief; opposing counsel expressly denied concurrence.

For the reasons given, Defendant UAW respectfully requests that its Motion for Summary Judgment be Granted, that judgment be entered in its favor, and that Plaintiff's Complaint as to it be dismissed in its entirety. In the alternative, and only to the extent full summary judgment is not entered in UAW's favor, Defendant UAW respectfully requests that the Court enter partial summary judgment on Plaintiff's Title VII (Count I) and Elliott Larsen (Count II) hostile-work-environment claims, to the extent that those claims are based on allegations of harassment by Gerald Kariem or Jimmy Settles.

Respectfully submitted:

s/ *Abigail V. Carter*
Abigail V. Carter (NY 4022315)
Adam Bellotti (DC 1020169)
BREDHOFF & KAISER, PLLC
805 Fifteenth, N.W., Suite 1000
Washington, DC 20005
(202) 842-2600
acarter@bredhoff.com
abellotti@bredhoff.com

*Counsel for UAW*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 31, 2021, I caused the foregoing Motion for Summary Judgment, or, In the Alternative, for Partial Summary Judgment, to be electronically filed with the Clerk of the Court using the ECF system which will send notification of filing to all participants in the CM/ECF system.

<u>s/ *Adam Bellotti*</u>
Adam Bellotti (DC 1020169)
BREDHOFF & KAISER, PLLC

## CERTIFICATE OF COMPLIANCE

I, Abigail V. Carter, certify that this document complies with Local Rule 5.1(a),

including: double-spaced (except for quoted materials and footnotes); at least one-

inch margins on the top, sides, and bottom; consecutive page numbering; and type

size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for

non-proportional fonts) or 14 point (for proportional fonts). I also certify that it is

the appropriate length. Local Rule 7.1(d)(3).

*/s/ Abigail V. Carter*
Abigail V. Carter (NY 4022315)
BREDHOFF & KAISER, P.L.L.C.

Dated: August 31, 2021

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| PATRICIA MORRIS-GIBSON, | |
| Plaintiff, | Case No. 2:20-cv-11346 |
| v. | Hon. Mark A. Goldsmith |
| THE INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA (UAW), et al., | Mag. Judge Anthony P. Patti |
| Defendants. | |

**DEFENDANT UAW'S BRIEF IN SUPPORT OF ITS MOTION
FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, FOR
PARTIAL SUMMARY JUDGMENT**

Abigail V. Carter (NY 4022315)
Adam Bellotti (DC 1020169)
BREDHOFF & KAISER, P.L.L.C.
805 Fifteenth, St. N.W., Suite 1000
Washington, DC 20005
(202) 842-2600
acarter@bredhoff.com
abellotti@bredhoff.com

*Counsel for the UAW*

Dated: August 31, 2021

## STATEMENT OF THE ISSUES

I.      Whether the International Union, United Automobile, Aerospace, Agricultural Implement Works of America ("UAW") is entitled to summary judgment on Plaintiff's counts for Retaliation under Title VII of the Civil Rights Act of 1964, Count III, and Retaliation under the Elliott Larsen Civil Rights Act ("ELCRA"), Count IV, where the Plaintiff has never been subject to an adverse employment action during her employment at UAW, and where the purportedly adverse actions have undisputed non-retaliatory causes?

II.     Whether UAW is entitled to summary judgment on Plaintiff's count for hostile-work-environment sexual harassment under ELCRA, Count II, where it took prompt and effective remedial action upon receipt of third-party notice that there was a probability that sexual harassment was occurring?

III.    Whether UAW is entitled to summary judgment on Plaintiff's count for hostile work environment under Title VII, Count I, where UAW exercised reasonable care to prevent harassment, including by promulgating a sexual harassment policy that provided for three alternative reporting mechanisms; where Plaintiff, by her own admission, failed to report any of the allegedly harassing behavior to UAW management; and where UAW took prompt and effective corrective action once it independently learned of the allegations?

IV.     As an alternative to UAW's motion for full summary judgment on Counts I

and II, whether UAW is entitled to partial summary judgment on those counts to

the extent they are based on alleged harassment by Jimmy Settles, where all such

allegations occurred more than 300 days before Plaintiff filed her Equal

Employment Opportunity Commission ("EEOC") charge and more than three

years before she filed her Complaint and where Plaintiff's charge to the EEOC did

not reference any alleged harassment by Settles?

V.      As an alternative to UAW's motion for full summary judgment on Counts I

and II, whether UAW is entitled to partial summary judgment on those counts to

the extent they are based on alleged harassment by Gerald Kariem, where the

allegations involving Kariem are not so severe or pervasive that a reasonable

person in Plaintiff's position would find the work environment hostile and where

Plaintiff's EEOC charge did not reference any alleged harassment by Kariem?

## <u>STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>

**I.     Plaintiff Was Not Subjected to an Adverse Employment Action**

- *Nathan v. Great Lakes Water Auth.*, 992 F.3d 557 (6th Cir. 2021)

- *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)

- *Chen v. Wayne State Univ.*, 771 N.W.2d 820 (Mich. Ct. App. 2009)

**II.    Plaintiff Failed to Establish Respondeat Superior for her ELCRA Hostile-Work-Environment Claim**

- *Chambers v. Trettco, Inc.*, 614 N.W.2d 910 (Mich. 2000)

- *Radtke v. Everett*, 501 N.W.2d 155, 169 (Mich. 1993)

- *Elezovic v. Ford Motor Co.*, 697 N.W.2d 851 (Mich. 2005)

- *Chambers v. Trettco, Inc.*, 624 N.W.2d 543 (Mich. Ct. App. 2001)

- *Thornton v. Fed. Express Corp.*, 530 F.3d 451 (6th Cir. 2008)

**III.   Under Title VII, UAW Did Not Negligently Fail To Prevent Harassment from Taking Place**

- *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998)

- *Thornton v. Fed. Express Corp.*, 530 F.3d 451 (6th Cir. 2008)

- *Vance v. Ball State Univ.*, 570 U.S. 421 (2013)

- *EEOC v. AutoZone, Inc.*, 692 F. App'x 280 (6th Cir. 2017)

IV.    **Plaintiff's Claims Involving Allegations against Jimmy Settles Are Barred by the Statute of Limitations and her Failure to Exhaust Administrative Remedies**

- *Mair v. Consumers Power Co.*, 348 N.W.2d 256 (Mich. 1984)

- *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)

- *King v. Acosta Sales & Mktg., Inc.*, 678 F.3d 470 (7th Cir. 2012)

- *Strouss v. Mich. Dep't of Corr.*, 250 F.3d 336 (6th Cir. 2001)

- *Cantu v. Mich. Dep't of Corr.*, 653 F. Supp. 2d 726 (E.D. Mich. 2009)

V.     **Plaintiff's Claims Involving Allegations against Gerald Kariem Do Not Allege Severe or Pervasive Harassment and Are Barred by her Failure to Exhaust Administrative Remedies**

- *Nathan v. Great Lakes Water Auth.*, 992 F.3d 557 (6th Cir. 2021)

- *Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993)

- *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)

## **TABLE OF CONTENTS**

**STATEMENT OF THE ISSUES** ............................................................ ii

**STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES** ....................................................... iv

**TABLE OF AUTHORITIES** ............................................................ viii

**STATEMENT OF MATERIAL FACTS ("SMF")** ............................................... 1

**ARGUMENT** ............................................................. 12

   I.  **UAW is entitled to summary judgment on Plaintiff's retaliation claims under both Title VII and ELCRA because she was not subjected to an adverse employment action.** ........................................... 12

  II.  **UAW is entitled to summary judgment on Plaintiff's ELCRA hostile-work-environment claim because Plaintiff has not established respondeat superior liability.** ........................................ 18

     A.  **Before March 2019, no reasonable employer would have been aware of a substantial probability that sexual harassment was occurring.** ......... 20

     B.  **Once UAW learned of the alleged harassment by Foster in March 2019, it took prompt and effective corrective action.** ........................ 25

 III.  **UAW is entitled to summary judgment on Plaintiff's Title VII hostile-work-environment claim because it did not negligently fail to prevent harassment from taking place.** .................................... 28

     A.  **Miguel Foster was not Plaintiff's supervisor.** ........................... 29

     B.  **UAW was not negligent in controlling workplace conditions.** ............... 31

 IV.  **In the alternative to Parts II and III, UAW is entitled to partial summary judgment on Plaintiff's hostile-work-environment claims to the extent those claims are based on conduct by Settles.** ...................... 34

     A.  **UAW's liability for alleged harassment committed by Settles is barred under the statutes of limitations.** ............................................. 35

**B. Plaintiff's failure to exhaust the Settles allegations precludes UAW's liability under Title VII.** ..............................................................37

**V. In the alternative to Parts II and III, UAW is entitled to partial summary judgment on Plaintiff's hostile-work-environment claims to the extent those claims are based on conduct by Kariem.** ......................38

**A. Kariem's alleged conduct was neither severe nor pervasive.** ................39

**B. Plaintiff did not exhaust administrative remedies with respect to her Kariem allegations.** ..................................................................40

**CONCLUSION** ..................................................................40

**CERTIFICATE OF SERVICE** ..........................................................1

**CERTIFICATE OF COMPLIANCE** ....................................................2

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)............................................................................12

*Baldwin v. Blue Cross/Blue Shield of Ala.*,
480 F.3d 1287 (11th Cir. 2007) .........................................................37

*Burlington Indus., Inc. v. Ellerth*,
524 U.S. 742 (1998)......................................................................28, 29

*Burlington N. & Santa Fe Ry. Co. v. White*,
548 U.S. 53 (2006).......................................................................13, 15

*Campbell v. Haw. Dep't of Educ.*,
892 F.3d 1005 (9th Cir. 2018) ......................................................16, 17

*Cantu v. Mich. Dep't of Corr.*,
653 F. Supp. 2d 726 (E.D. Mich. 2009) .............................................38

*Carr v. Ford Motor Co.*,
Nos. 273675, 274251, 2008 WL 1838595 (Mich. Ct. App. Apr. 24,
2008) ...................................................................................................27

*Chambers v. Trettco, Inc.*,
614 N.W.2d 910 (Mich. 2000)..................................18, 19, 25, 27

*Chambers v. Trettco, Inc.*,
624 N.W.2d 543 (Mich. Ct. App. 2001)..........................................24

*Chaney v. Haworth, Inc.*,
802 F. App'x 1006 (6th Cir. 2020) ....................................................33

*Chen v. Wayne State Univ.*,
771 N.W.2d 820 (Mich. Ct. App. 2009)..........................................14

*Cooper v. Bader & Sons Co.*,
No. 338519, 2018 WL 2449129 (Mich. Ct. App. May 31, 2018)...............24, 27

viii

*Dixon v. Ashcroft,*
   392 F.3d 212 (6th Cir. 2004) ...............................................................................38

*EEOC v. AutoZone, Inc.,*
   692 F. App'x 280 (6th Cir. 2017) ....................................................29, 30, 31, 33

*Elezovic v. Ford Motor Co.,*
   697 N.W.2d 851 (Mich. 2005) ..............................................................21, 22, 24

*Fleenor v. Hewitt Soap Co.,*
   81 F.3d 48 (6th Cir. 1996) ...................................................................................33

*Gipson v. Tawas Police Auth.,*
   794 F. App'x 503 (6th Cir. 2019) ......................................................................16

*Griesbaum v. Aventis Pharms.,*
   259 F. App'x 459 (3d Cir. 2007) .......................................................................15

*Hamood v. Trinty Health Corp.,*
   No. 2:18-CV-13194, 2021 WL 735789 (E.D. Mich. Feb. 25, 2021) ................32

*Hartleip v. McNeilab, Inc.,*
   83 F.3d 767 (6th Cir. 1996) ...................................................................23, 32, 34

*Harris v. Forklift Sys., Inc.,*
   510 U.S. 17 (1993).................................................................................................39

*King v. Acosta Sales & Mktg., Inc.,*
   678 F.3d 470 (7th Cir. 2012) ..............................................................................36

*Kocsis v. Multi-Care Mgmt., Inc.,*
   97 F.3d 876 (6th Cir. 1996) .................................................................................17

*Krause v. City of La Crosse,*
   246 F.3d 995 (7th Cir. 2001) ..............................................................................17

*Mair v. Consumers Power Co.,*
   348 N.W.2d 256 (Mich. 1984)............................................................................35

*McGowan v. City of Eufala,*
   472 F.3d 736 (10th Cir. 2006) ............................................................................17

*McKenzie v. Ill. Dep't of Transp.*,
   92 F.3d 473 (7th Cir. 1996) ................................................................15

*Nat'l R.R. Passenger Corp. v. Morgan*,
   536 U.S. 101 (2002)..........................................................36, 39, 40

*Nathan v. Great Lakes Water Auth.*,
   992 F.3d 557 (6th Cir. 2021) ......................................................13, 29

*Prince v. Rice*,
   453 F. Supp. 2d 14 (D.D.C. 2006)..............................................14, 17

*Radtke v. Everett*,
   501 N.W.2d 155 (Mich. 1993)..........................................................19

*Rouhani v. Bronson Battle Creek Hosp.*,
   No. 315121, 2014 WL 3512915 (Mich. Ct. App. July 15, 2014)................26, 27

*Schmitt v. Solvay Pharms., Inc.*,
   No. 06-11791, 2007 WL 3173323 (E.D. Mich. Oct. 29, 2007) ........................36

*Strouss v. Mich. Dep't of Corr.*,
   250 F.3d 336 (6th Cir. 2001)llert........................................................37

*Sullivan v. River Valley Sch. Dist.*,
   197 F.3d 804 (6th Cir. 1999) ............................................................16

*Thornton v. Fed. Express Corp.*,
   530 F.3d 451 (6th Cir. 2008) ......................................................27, 28

*Unal v. Los Alamos Pub. Schs.*,
   638 F. App'x 729 (10th Cir. 2016) ....................................................18

*Vance v. Ball State Univ.*,
   570 U.S. 421 (2013)..........................................................28, 29, 30, 32

*Von Gunten v. Maryland*,
   243 F.3d 858 (4th Cir. 2001) ............................................................15

*Wasek v. Arrow Energy Servs., Inc.*,
   682 F.3d 463 (6th Cir. 2012) ............................................................13

*Williams v. GMC*,
    187 F.3d 553 (6th Cir.1999) ...................................................................36

*Zeller v. Canadian Nat'l Ry. Co.*,
    666 F. App'x 517 (6th Cir. 2016) ..........................................................32

**Statutes**

42 U.S.C. § 2000e-5(e)(1).............................................................................35

MCL § 37.2102 ............................................................................................18

MCL § 37.2103(i) ..................................................................................18, 22

MCL § 37.2103(i)(*iii*) .................................................................................18

MCL § 600.5805(2) .....................................................................................35

**Court Rules**

Fed. R. Civ. P. 56(a)....................................................................................12

## <u>STATEMENT OF MATERIAL FACTS ("SMF")</u>

1.     UAW is a labor organization with a principal place of business at 8000 East Jefferson Street, Detroit, MI. Siddiqi Decl. ¶ 4.

2.     Plaintiff Patricia Morris-Gibson was hired by UAW on November 16, 2008, and is still employed by UAW but currently on disability leave from her assignment as an International Servicing Representative in UAW's Technical, Office, and Professional ("TOP") Department. Siddiqi Decl. ¶¶ 7, 12.

3.     Plaintiff has neither resigned nor retired from her employment with UAW and would be entitled to return to her position as a TOP servicing representative if medically cleared by a doctor to do so. Siddiqi Decl. ¶ 13.

4.     At all relevant times, UAW maintained a policy on the Elimination of Sexual Harassment in the Workplace and a No Harassment & Discrimination Policy (collectively, "UAW's Anti-Harassment Polices"). Siddiqi Decl. ¶ 41 & Attachs. C & D; Patricia Morris-Gibson ("PMG") Dep. Exs. 10 & 11.

5.     A copy of the policy on the Elimination of Sexual Harassment in the Workplace was part of the UAW Staff Council Manual. Siddiqi Decl. ¶ 42; PMG Dep. Ex. 10.

6.     Plaintiff was a member of the UAW Staff Council and its Manual applied to her employment. Siddiqi Decl. ¶ 16.

7.     A copy of the No Harassment & Discrimination Policy was distributed to all

1

UAW employees in a December 12, 2015 email from UAW Human Resources

Director Naghmana Siddiqi. Siddiqi Decl. ¶ 43; PMG Dep. Ex. 11.

8.     The UAW Anti-Harassment Policies designate three alternative reporting

mechanisms for employees: (a) report harassment to the Administrator of their

department; (b) inform the Human Resources Administrator directly; (c) file a

contract grievance under the grievance and arbitration provisions of the UAW Staff

Council Manual. Siddiqi Decl. ¶ 44; Jeffrey Shrock Dep. 34:2-35:18.

9.     The UAW Anti-Harassment Policies allowed employees to file both formal

and informal complaints of sexual harassment. Siddiqi Decl. ¶ 45.

10.    The UAW Anti-Harassment Policies obligated supervisors and managers to

report sexual harassment allegations of which they became aware. Shrock Dep.

34:2-35:18; George Hardy Dep. 35:10-25, 47:24-48-11; Siddiqi Decl. ¶ 46.

11.    Plaintiff had a copy of both the Staff Council Manual, containing the Policy

on the Elimination of Sexual Harassment in the Workplace, and the No

Discrimination and Harassment Policy. PMG Dep. 280:13-282:14; 283:6-284:9.

12.    The UAW Staff Council Manual includes a multistep grievance and

arbitration process that allows employees or the Staff Council to (i) informally

discuss complaints with their Department Head; (ii) submit formal written

grievances to the Department Head; (iii) refer unresolved grievances to the Staff

Grievance Review Committee, consisting of the Staff Appeals Committee and

International Executive Board ("IEB") Appeals Committee; (iv) refer unresolved grievances to binding arbitration. PMG Dep. Ex. 10 at UAW_00000464_020-024.

13.     Plaintiff knew that, under the UAW's policies, she could have filed a contract grievance alleging a violation of the policy on Elimination of Sexual Harassment in the Workplace, but she did not file a grievance concerning any of the harassment she alleges to have suffered. PMG Dep. 281:13-282:20.

14.     From about March 18, 2018 to October 3, 2018, Plaintiff reported to Miguel Foster, assistant director of the TOP Department. Siddiqi Decl. ¶ 11.

15.     Foster, as assistant director of the TOP Department, did not have the authority to hire, fire, promote, or discipline employees; change or reduce employees' pay or benefits; or significantly alter employees' responsibilities. Shrock Decl. ¶ 8; Hardy Decl. ¶ 6; Joe Rioux Decl. ¶ 7.

16.     Before she was interviewed by UAW Administrative Assistant Jeffrey Shrock in April 2019, Plaintiff did not report any of the allegedly harassing conduct Miguel Foster directed at her to a UAW supervisory or managerial employee. PMG Dep. 47:8-14; 58:5-18; 64:23-65:3; 68:20-23; and 71:5-72:10.

17.     In the last week of September or first week of October 2018, against Plaintiff's wishes, Plaintiff's coworker, Darryl Bragg, informed their Department Director, George Hardy, that Plaintiff had told him that Miguel Foster had kissed Plaintiff in an elevator at Blue Cross Blue Shield Michigan ("BCBSM"), and that

Plaintiff was upset that this had occurred. Darryl Bragg Decl. ¶¶ 6-8.

18.     After learning what Bragg had told Hardy, Plaintiff went to Hardy and informed him that she was a "big girl," that she did not need anybody to speak up for her, and that if she had something to say to him, she would. Hardy responded by thanking her and informing her that, as far as he was concerned, it was not an issue. PMG Dep. 112:2-9; Hardy Decl. ¶ 10.

19.     Plaintiff did not want Hardy to take any action in response to Bragg's report to Hardy. PMG Dep. 113:14-21.

20.     In a subsequent meeting, when Hardy asked Plaintiff about Bragg's report, Plaintiff denied either being offended by Foster's kiss or telling Bragg that she was offended by it. PMG Dep. 116:2-22; Bragg Decl. ¶ 10; Hardy Decl. ¶ 11.

21.     Hardy believed Plaintiff when she reported that she was not offended by Foster's kiss. Hardy Dep. 109:22-110:3.

22.     Before at least March 2019, other than Bragg's report regarding the kiss, neither Plaintiff nor any other employee told Hardy about the purportedly harassing conduct of Plaintiff by Foster. Hardy Decl. ¶ 9.

23.     On October 3, 2018, the same day that Plaintiff denied being offended by Foster's kiss, she left the workplace and began a medical leave that lasted until March 11, 2019. PMG Dep. 122:19-21; Bragg Decl. ¶ 13; Hardy Decl. ¶¶ 13, 16.

24.     In February of 2019, Naghmana Siddiqi, UAW's Human Resources

Director, recommended that Plaintiff undergo an Independent Medical Exam ("IME") pursuant to the UAW Sick Leave and Disability Program ("Sick Leave Program"), which provides that an employee may be sent for an IME "at any time a staff member is eligible . . . under this Program." Siddiqi Decl. ¶ 23 & Attach. A at F-3.

25.    UAW's normal practice is to send any employee who has been out on medical leave for a period approaching six months for an IME. Siddiqi Decl. ¶ 24.

26.    When Plaintiff returned March 11, 2019, she returned to the same position, department, and immediate supervisor that she had at the time she went out on medical leave in October of 2018, which was as an International Servicing Representative in the TOP Department reporting to Miguel Foster. Siddiqi Decl. ¶ 28; Rioux Decl. ¶ 9; PMG Dep. 158:16-159:13.

27.    It is UAW's practice to return employees who have been out on sick leave to the same position and the same department that they were in at the time they went out on sick leave. Siddiqi Decl. ¶ 29.

28.    On or about March 26, 2019, Joe Rioux decided that Plaintiff would continue to perform work in the TOP Department, as well as begin to perform work in the IPS Department, notwithstanding that Plaintiff provided Hardy and Rioux with a list of other departments where she would like to work. PMG Dep. 41:10-22; 168:15-169:24; Hardy Decl. ¶¶ 19-20; Rioux Decl. ¶¶ 11-12.

5

29.    The UAW Human Resources Department first learned of Plaintiff's

allegations of sexual harassment by Foster when it received a copy of the IME

Report prepared by Dr. Gerald A. Shiener, on March 14, 2019. Siddiqi Decl. ¶ 30.

30.    On March 14, 2019, Siddiqi forwarded the IME Report to the UAW

President's Office and requested to discuss it. Siddiqi Decl. ¶ 30 & Attach. B.

31.    On or about March 25, 2019, the UAW designated Jeff Shrock, Top

Administrative Assistant to UAW President Gary Jones, to conduct an

investigation into the allegations of harassment contained in the IME Report.

Shrock Dep. 54:23-55:13; Shrock Decl. ¶ 9.

32.    During the UAW's April 2019 investigation, Plaintiff requested to move her

office and was permitted to do so. PMG Dep. 176:15-177:24; 179:23-180:3.

33.    On or about April 2, 2019, Shrock, in the presence of UAW Staff Council

President Scott Andrews, interviewed Plaintiff as part of UAW's investigation into

the allegations of harassment by Foster revealed in the IME report. At the start of

the interview, Shrock assured Plaintiff that the UAW does not accept any type of

retaliation. Shrock Dep. 60:18-61:3, 65:7-18; Shrock Decl. ¶ 10.

34.    During her April 2, 2019 interview, Plaintiff told Shrock that she had not

been harassed by any employees other than Miguel Foster. PMG Dep. 59:23-60:4;

Shrock Decl. ¶ 11.

35.    On April 4, 2019, two days after he interviewed Plaintiff as part of the

UAW's investigation, Shrock changed her reporting structure so that she would report directly to Department Director Rioux on an interim basis while the investigation was ongoing. Shrock Decl. ¶ 12; Rioux Decl. ¶ 15.

36.     On April 11, 2019, Shrock concluded his investigation into Plaintiff's allegations of harassment by Miguel Foster, summarized his findings in a report to President Jones and UAW Chief of Staff Mike Stone, and recommended certain remedial action, including disciplining Foster. Shrock Decl. ¶ 14 & Ex. A.

37.     On April 16, 2019, Shrock, Stone, Siddiqi, and Rioux met with Miguel Foster to discuss the investigatory findings and impose remedial action. At that meeting, the UAW permanently altered Plaintiff's reporting relationship so that she would report to Hardy and Rioux, instead of Foster; instructed Foster that he was required to have another employee present if he were to meet with Plaintiff for any reason; and imposed a four-day disciplinary layoff on Foster. Shrock Decl. ¶ 16.

38.     On April 17, 2019, Plaintiff was informed that UAW was changing her reporting relationship so that she would be reporting directly to George Hardy; that she was to have no more interaction with Miguel Foster; and that she would be permitted, but not required, to move her office if she chose to do so. Shrock Decl. ¶ 17; Shrock Dep. Ex. 9; Siddiqi Decl. ¶ 32.

39.     Foster did not sexually harass Plaintiff after UAW implemented its remedial measures on April 16-17, 2019. PMG Dep. 196:3-17.

7

40.     On April 25, 2019, Plaintiff took medical leave from the UAW and has not

returned to work at UAW since that date. PMG Dep. 196:11-17. Rioux Decl. ¶ 17.

41.     On July 2, 2019, Plaintiff filed a charge with the EEOC. Her EEOC charge

alleged that she had been subjected to harassment by "the Assistant Director of

Technical Office Professionals" (that is, Foster), but did not allege harassment by

Jimmy Settles or Gerald Kariem. PMG Dep. Ex. 12.

42.     On November 19, 2019, Plaintiff made a supplementary filing to the EEOC

in support of her charge. That supplemental filing was never provided to the UAW

by Plaintiff or the EEOC. PMG Dep. 287:16-288:21; Bermudez Decl. ¶¶ 9-11.

43.     In the Complaint, Plaintiff made allegations of purportedly sexually

harassing conduct by former UAW Vice President Jimmy Settles. As set forth in

the table below, all of that conduct occurred more than 300 days before Plaintiff

filed her July 2, 2019 EEOC charge and more than three years before Plaintiff filed

her May 27, 2020 Complaint:

| Allegation & Complaint Paragraph | Latest Possible Date | Citation to the Record |
|---|---|---|
| Settles inquired about Plaintiff's name and belligerently screamed Plaintiff's name across a hotel lobby, insisting that she come over to him. ¶ 103, PageID.19. | 2003 | PMG Dep. 228:11-229:9 |
| While talking to Plaintiff at the Macy's Bar at the UAW Black Lake Conference Center, Settles ran his hand across her stomach and asked if he could "have some." ¶ 104, PageID.19. | May 2006 | PMG Dep. 232:8-233:4 |
| Settles made a comment to Gamble | 2008 | PMG Dep. |

| | | |
|---|---|---|
| regarding Plaintiff's "hard nipples showing through her shirt" and that "she must be happy to see you." Settles told Plaintiff that Gamble was so excited to have seen her, that he stuttered the rest of the meeting. ¶¶ 105-107, PageID.19-20. | | 235:3-15 |
| Settles told PMG that he would buy her a pair of red bottom shoes (Christian Louboutins) if she was wearing them and had them hanging out of his desk drawer. ¶ 108, PageID.20. | 2010 | PMG Dep. 238:13-24 |
| Settles requested that Plaintiff bring "pretty friends" to his annual golf outings. ¶ 110, PageID.20. | May 2014 | PMG Dep. 245:24-247:1 |
| Settles insisted that Plaintiff sit on his lap and when she refused, he grabbed Plaintiff by the ponytail and pulled her in an attempt to get her chair to his chair. When she got free from his grasp, Settles grabbed the back of her shirt, and ripped it in an attempt to keep her from getting away. ¶ 111, PageID.20-21. | December 2010 | PMG Dep. 249:18-250:1 |
| When Plaintiff decided to run for the position of Vice President of the TULC executive board, Settles told Plaintiff to sit her ass down and be a secretary until he tells her otherwise. ¶ 113, PageID.21. | 2014 | PMG Dep. 256:14-259:5 |
| When Plaintiff advised Settles that she did not mind working for Vice President Cindy Estrada, Settles told her "mother fucker shut the fuck up" and to "appreciate when someone is trying to take care of [her]." ¶ 114, PageID.21. | 2010 | PMG Dep. 32:22-33:3; 260:21-262:6 |
| After a disagreement, Settles threatened to demote Plaintiff by sending her back to Blue Cross. When Plaintiff became visibly upset, Settles summoned a waiter and said, "bring her ass a drink to calm her down." ¶ 115, PageID.21. | 2009 | PMG Dep. 243:16-21; 244:5-9; 262:14-19 |

| | | |
|---|---|---|
| During Plaintiff's initial interview with Settles, Settles asked Plaintiff if she planned on having more children. After Plaintiff said that she "wasn't sure", Settles informed Plaintiff that if she did plan on having more children, "this would probably not be the job for [her]." ¶ 116, PageID.21-22. | October 2008 | PMG Dep. 262:20-263:6 |
| Settles informed Plaintiff and another employee that they would both be divorced in two years, as marriages in the UAW do not last. When Plaintiff stated that she disagreed because she loved her husband, Settles laughed and said he thought the same about his first wife. ¶ 119, PageID.22-23. | 2009 | PMG Dep. 270:7-271:7 |
| Settles forced Plaintiff to meet Kwame Kilpatrick, former mayor of Detroit, at the TULC so Kilpatrick could "see a pretty face" to help him feel better before he went to prison. ¶ 121, PageID.23. | 2013 | PMG Dep. 271:8-272:16 |
| Settles asked Plaintiff if he could take her out for a drink for his birthday and said "[y]ou can at least make an old man happy and let me think I could take her." [not in Complaint] | 2012 | PMG Dep. 278:22-279:19 |

44.    Settles left Plaintiff a voicemail in May 2019 that contained no sexually

harassing content. PMG Dep. 275:9-18; Bellotti Decl. ¶¶ 6-9 & Ex. A.

45.    Settles retired from the UAW in June 2018 and was not employed by the

UAW in May 2019. PMG Dep. 275:9-15; Siddiqi Decl. ¶ 38.

46.    Prior to filing this lawsuit, Plaintiff never reported any of the purportedly

harassing conduct committed by Jimmy Settles to a UAW supervisory or

managerial employee. PMG Dep. 231:23-232:7, 234:18-21, 238:10-12, 242:2-11,

245:6-23; 249:15-17, 252:6-253:24, 260:6-20, 262:7-13, 263:23-264:2, 268:10-269:8, 273:8-19.

47.     Prior to filing this lawsuit, Plaintiff never reported any of the purportedly harassing conduct committed by Gerald Kariem to a UAW supervisory or managerial employee. PMG Dep. 213:14-17; 221:24-222:12; 226:3-14.

48.     Gerald Kariem retired from the UAW in June 2021. Kariem Dep. 27:14-19.

49.     Throughout her employment, Plaintiff has not been discharged, suspended, demoted, or otherwise disciplined by UAW, and Plaintiff has not applied for, or been denied, a promotion at the UAW. Siddiqi Decl. ¶ 9; Hardy Dep. 59:4-17; Hardy Decl. ¶ 24.

50.     The Sick Leave Program is set forth in the UAW Staff Council Manual. Under the terms of that program, UAW staff employees who become sick or totally disabled are entitled to draw 100% of their salary for a maximum of six months, 75% of their salary for the next six months, and 50% of their salary for an additional 12 months during one continuous period of disability. Siddiqi Decl. ¶ 17 & Attach. A at F-1.

51.     Following the terms of the UAW's Sick Leave Program, Plaintiff was paid 100% of her salary from April 25, 2019 to October 24, 2019; 75% of her salary from October 25, 2019 to April 24, 2020; and 50% of her salary from April 25, 2020 to April 24, 2021. Siddiqi Decl. ¶ 19.

52.     Since at least 2014, the Sick Leave Program has been applied to all

employees who have been placed on medical leave and all such employees,

including Ms. Morris-Gibson, have had their salaries and benefits reduced

consistent with the written document. Siddiqi Decl. ¶ 3, 18.

## ARGUMENT

Summary judgment is appropriate if there are no genuine issues of material

fact and the moving party demonstrates that it is entitled to judgment on each issue

as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists

when, viewing the evidence in the light most favorable to the non-moving party,

there is "sufficient evidence favoring the nonmoving party for a jury to return a

verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)

(citations omitted). "If the evidence is merely colorable, or is not significantly

probative, summary judgment may be granted." *Id.* at 249-50.

## I.     UAW is entitled to summary judgment on Plaintiff's retaliation claims under both Title VII and ELCRA because she was not subjected to an adverse employment action.

Plaintiff has been employed as an International Servicing Representative

with the UAW since 2008. In that time, Plaintiff has not been terminated, demoted,

denied a promotion, or experienced a loss of job responsibilities. In her Complaint,

Plaintiff nonetheless alleges four purported adverse employment actions taken in

retaliation for protected conduct in violation of both Title VII (Count III) and

ELCRA (Count IV). But because none of the actions Plaintiff relies upon are, as a matter of law, adverse employment actions, and because they all have undisputed non-retaliatory causes, UAW is entitled to summary judgment on both the Title VII and ELCRA retaliation claims.

  **A.**  To make out a prima facie case of retaliation under both Title VII and the ELCRA, a plaintiff must show that (1) she "engaged in activity protected by" the relevant statute; (2) "this exercise of protected rights was known to" the defendant; (3) the defendant "thereafter took adverse employment action against" the plaintiff; and (4) "there was a causal connection between the protected activity and the adverse employment action." *Nathan v. Great Lakes Water Auth.*, 992 F.3d 557, 571 (6th Cir. 2021); *see also Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 472 (6th Cir. 2012) (recognizing the ELCRA retaliation analysis "is identical to the Title VII analysis").

  Title VII and ECLRA's antiretaliation provisions "protect[] an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). Therefore, to be actionable, an adverse employment action must be "materially adverse," which "means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68. Examples of adverse employment actions include termination, demotions, and significant losses of benefits or job

13

responsibilities. *Chen v. Wayne State Univ.*, 771 N.W.2d 820, 839 (Mich. Ct. App. 2009). Adverse employment actions are *changes* in the plaintiff's employment; maintenance of the status quo generally will not satisfy plaintiff's burden. *See, e.g.*, *Prince v. Rice*, 453 F. Supp. 2d 14, 29 (D.D.C. 2006) (dismissing retaliation claim where "action" constituted "merely a preservation of the then-existing status quo").

Here, Plaintiff has identified four adverse actions she claims to have suffered: (1) loss of pay and benefits in 2020 and 2021, Compl. ¶¶ 177-78, PageID.29-30; (2) undergoing an IME in early 2019, Compl. Ex. 2 at PageID.40 (EEOC Charge); (3) "reassign[ment]" to a position that reported to Foster in March and April of 2019, Compl. ¶ 172, PageID.29; and (4) "downsiz[ing] her office location," *id.*[1] Plaintiff's retaliation claims fail on the third and fourth elements because, given the undisputed material facts set forth above, none of these alleged actions constitute adverse employment actions and all were indisputably caused by something other than her protected activity.

**B.**    Taking each alleged adverse action in turn, UAW is entitled to summary judgment on Plaintiff's retaliation claims.

*1.*    <u>Salary Reduction:</u> Although a decrease in pay or benefits could, under

---

[1] To the extent Plaintiff suggests UAW's failure to "implement any corrective action against Foster for his admitted wrongful conduct" was an adverse employment action, Compl. ¶¶ 160, 173, PageID.28-29, that claim would fail for the simple reason that it was not an action taken against Plaintiff, in addition to being contrary to undisputed fact, SMF ¶ 37.

certain circumstances, constitute an adverse employment action, that is not the case when the decrease resulted from application of a pre-existing policy. Here, Plaintiff's pay was decreased through the operation of the Sick Leave Program. SMF ¶ 51. The Sick Leave Program is set forth in the UAW Staff Council manual and was a term of Plaintiff's employment that predated any of Plaintiff's alleged protected activity. SMF ¶ 50, 52. It is also undisputed that UAW's Sick Leave Program is uniformly applied and that Plaintiff's pay and benefits were decreased consistent with that policy. SMF ¶ 52.  In these circumstances, the mere application of a pre-existing employment term cannot constitute an adverse employment action. *See Von Gunten v. Maryland*, 243 F.3d 858, 869 (4th Cir. 2001) (employer's application of generally applicable sick-leave policy was not adverse action), *abrogated on other grounds by White*, 548 U.S. 53; *McKenzie v. Ill. Dep't of Transp.*, 92 F.3d 473, 484 (7th Cir. 1996) (same as to break policy). Alternatively, given the clear policy and its uniform application, there can be no real doubt that UAW's successive reduction in Plaintiff's salary after the six-month and twelve-month marks of her medical leave was not caused by Plaintiff's protected activity. *See, e.g.*, *Griesbaum v. Aventis Pharms.*, 259 F. App'x 459, 469 (3d Cir. 2007) (summary judgment for employer where it "terminated [plaintiff's] employment consistently with its uniformly-applied medical leave policy.").

      *2.*   <u>IME:</u> Plaintiff's second alleged adverse action—the IME in February

of 2019—fares no better. Being required to undergo an IME does not constitute an employment action, let alone a materially adverse one. *See Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 814 (6th Cir. 1999) (ordering employee to undergo IME was not an adverse employment action where employer was entitled to do so); *Gipson v. Tawas Police Auth.*, 794 F. App'x 503, 508 (6th Cir. 2019) (same). Alternatively, the undisputed evidence establishes that UAW applied its standard policy in electing to send Plaintiff for an IME, SMF ¶¶ 51-52, and that the decisionmaker did not know about Plaintiff's harassment allegations at the time Plaintiff was sent for it, SMF ¶ 29. So there is no causal link between the protected activity and the decision to send her for an IME.

    *3.*    <u>Reassignment to Foster:</u> Next, Plaintiff alleges that "Defendants reassigned Plaintiff to a position that still reported directly to Foster." Compl. ¶ 172, PageID.29. Plaintiff appears to be referring to one of two occurrences: that when she returned from medical leave in March of 2019, she returned to her prior position, which reported to Foster, SMF ¶ 26, or that she was not reassigned to a different department by Joe Rioux in late March of 2019, SMF ¶ 28. Neither occurrence qualifies as an adverse employment action. In both scenarios, Plaintiff is complaining that the status quo was maintained, which cannot constitute an adverse action as a matter of law. *See Campbell v. Haw. Dep't of Educ.*, 892 F.3d 1005, 1014, 1021-22 (9th Cir. 2018) (a "decision to retain the status quo is quite

16

obviously not an adverse employment action"); *McGowan v. City of Eufala*, 472 F.3d 736, 742–43 (10th Cir. 2006) (denial of requested shift change was not adverse action because it maintained status quo). In short, a plaintiff cannot "bootstrap a retaliation claim from what amounts to inaction to reverse" the challenged action. *Prince*, 453 F. Supp. 2d at 29.[2] Alternatively, it is again undisputed that UAW followed its standard practice in returning Plaintiff to her pre-leave position, SMF ¶ 27, so there is no causal link to any protected activity.

*4.* <u>Office Relocation</u>: Finally, Plaintiff complains that Defendants downsized her office location. As her deposition testimony establishes, however, *Plaintiff* requested to move offices in early April 2019, and her request was granted. SMF ¶ 32. So, Plaintiff's change in office location was caused by her request, not her protected activity. *See Krause v. City of La Crosse*, 246 F.3d 995 (7th Cir. 2001) (finding "meritless" a claim that an office location change was an adverse action where the employee requested it, even if it otherwise would have been considered a form of punishment). Furthermore, the undisputed evidence establishes that later in April 2019, Plaintiff was again offered a chance to move offices but declined to do so. SMF ¶ 38. In any event, even a forced office change

---

[2] Moreover, even actual "reassignments without salary or work hour changes do not ordinarily constitute adverse employment decisions." *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 885-87 (6th Cir. 1996). If actual reassignment is not an adverse employment action, *a fortiori*, the failure to reassign cannot be.

is not an adverse action unless the new location "negatively altered the … work conditions or interfered with [plaintiff's] ability to complete employment duties." *Unal v. Los Alamos Pub. Schs.*, 638 F. App'x 729, 744 (10th Cir. 2016) (collecting office relocation cases). There is no such allegation here.

In sum, each of Plaintiff's alleged adverse employment actions suffers from the same defects: she fails to identify any material change in her pre- and post-protected activity employment, and she fails to establish a causal link between her activity and her working conditions. Accordingly, she has failed to establish her initial burden to show retaliation, and UAW is entitled to summary judgment.

## II.  UAW is entitled to summary judgment on Plaintiff's ELCRA hostile-work-environment claim because Plaintiff has not established respondeat superior liability.

The ELCRA prohibits discrimination in employment on the basis of sex, which includes both quid pro quo and hostile-work-environment harassment. MCL §§ 37.2102, 37.2103(i)(*iii*). To bring a hostile-work-environment claim against her employer, an employee must prove, by a preponderance of the evidence: (1) "the employee belonged to a protected group"; (2) "the employee was subjected to communication or conduct on the basis of sex"; (3) "the employee was subjected to unwelcome sexual conduct or communication"; (4) "the unwelcome sexual conduct or communication was intended to or in fact did substantially interfere with the employee's employment or created an intimidating, hostile, or offensive

18

work environment"; and (5) "respondeat superior." *Chambers v. Trettco, Inc.*, 614 N.W.2d 910, 915 (Mich. 2000) (citation omitted). The employee bears the burden of proof on each element, meaning that, unlike under Title VII, under Michigan law, "a plaintiff must show some *fault* on the part of the employer." *Id.* at 916.

Here, even assuming that an issue of material fact exists as to the first four elements, UAW is entitled to summary judgment on Plaintiff's ELCRA hostile-work-environment claim because she has failed as a matter of law to establish the fifth element, respondeat superior. To do so, the plaintiff must "prove that the employer failed to take prompt and adequate remedial action upon notice of the creation of a hostile work environment." *Id.* "An employer, of course, must have notice of alleged harassment before being held liable for not implementing action." *Id.* (quoting *Radtke v. Everett*, 501 N.W.2d 155, 169 (Mich. 1993)). Employer notice, in turn, involves a reasonableness inquiry, such that "notice of sexual harassment is adequate if, by an objective standard, the totality of the circumstances were such that a reasonable employer would have been aware of a substantial probability that sexual harassment was occurring." *Id.* at 919.

In this case, Plaintiff cannot meet her burden because the undisputed facts establish that (A) UAW had no reasonable basis to be aware that sexual harassment was occurring before receiving the March 2019 IME Report, and (B) UAW took prompt and adequate corrective action once it became aware of those allegations.

19

**A. Before March 2019, no reasonable employer would have been aware of a substantial probability that sexual harassment was occurring.**

The undisputed evidence establishes that, at least until it received Dr. Shiener's IME Report on March 14, 2019, UAW had no reasonable basis on which to conclude that there was a substantial probability that sexual harassment was occurring. That was the case because Plaintiff consistently declined to report the alleged harassment to any supervisory or managerial employee or file a grievance about it and, in fact, told other employees that she did not want them to tell anyone at UAW about Foster's conduct towards her.

1.     Settles & Kariem Allegations: As an initial matter, with respect to the harassment allegations made against Kariem and Settles, there is no dispute that Plaintiff declined to tell any of the Employer's agents about that harassment. SMF ¶¶ 46-47. That includes during the UAW investigation into her allegations of harassment by Foster; when Shrock interviewed Plaintiff, she told Shrock that she had not been harassed by any UAW employees other than Miguel Foster. SMF ¶ 34. There is simply no evidence from which a reasonable factfinder could infer that UAW knew or should have known of the allegations that either Settles or Kariem had sexually harassed Plaintiff.[3]

---

[3] Plaintiff has alleged that UAW managerial personnel personally observed two incidents of harassment by Settles: an alleged inappropriate comment in front of then-Regional Director Rory Gamble and Settles allegedly grabbing Plaintiff during a Christmas Party. Compl. ¶¶ 105, 111-12, PageID.19-21. These allegations

2.    <u>Foster Kiss</u>: With respect to the allegation that Foster kissed Plaintiff on the elevator at BCBSM, the record shows that—contrary to Plaintiff's request— Plaintiff's coworker Darryl Bragg told UAW managerial employee George Hardy that Foster had kissed her. SMF ¶ 17. But Hardy's knowledge was insufficient to put the UAW on notice of probable sexual harassment because Plaintiff went out of her way to ensure that Hardy did not act on that knowledge.

"If an employee is sexually harassed in the workplace, it is that employee's choice whether to pursue the matter. In other words, the victim of harassment 'owns the right' whether to notify the company and start the process of investigation." *Elezovic v. Ford Motor Co.*, 697 N.W.2d 851, 861 (Mich. 2005). Here, Plaintiff took two different actions designed to prevent Hardy from acting. First, Plaintiff approached Hardy to make it clear to Hardy that Bragg did not speak for her, and that she would tell Hardy herself if she had something to say to him. SMF ¶ 18. Second, when Hardy convened a meeting and explicitly asked Plaintiff whether she was offended by Foster's kiss, Plaintiff denied either being offended or telling Bragg that she was offended, and Hardy believed Plaintiff's denial. SMF ¶¶ 20-21. As Plaintiff testified at deposition when asked if she wanted

---

cannot form the basis of employer liability because, having occurred no later than 2008 and 2010, respectively, they are barred by the statute of limitations. *See infra* at Part IV.A; SMF ¶ 43. It is also undisputed that Plaintiff never initiated the UAW's investigatory or remedial processes in response to these alleged incidents. SMF ¶ 46; *see infra* at 21-25.

Hardy to take any action in response to Bragg's report, "No. I just wanted to work." PMG Dep. 113:19-21.

Hardy was entitled to rely on Plaintiff's representations that she did not want him to do anything. For starters, Michigan law is clear that sexual harassment incudes only "*unwelcome*" sexual advances, requests, and verbal or physical conduct. MCL. § 37.2103(i). To the extent Plaintiff was not offended by Foster's conduct—as she herself told Hardy—it was not sexual harassment, and there was nothing to report. *See* Hardy Dep. 114:2-9 (Hardy did not treat the reported kiss as an allegation of sexual harassment). But more to the point, Hardy was entitled to respect Plaintiff's request that he take no further action in response to Bragg's report. As the Michigan Supreme Court has held, "when an employee requests confidentiality in discussing workplace harassment, and the request for confidentiality is honored, such a request is properly considered a waiver of the right to give notice." *Elezovic*, 697 N.W.2d at 861-63 (plaintiff's report of sexual harassment to supervisors in confidence did not constitute notice to the employer, notwithstanding that employer had a policy that required the supervisors to report the information to human resources). Here, as in *Elezovic*, Plaintiff chose not to have Hardy initiate an investigation into Foster's conduct. That decision was a "waiver of [her] right" to have Bragg's report constitute notice to UAW. *Id.* at 862.

3.   <u>Foster Verbal Allegations</u>: With respect to the verbal allegations of

harassment by Foster, the record is clear that UAW neither knew nor should have known of Plaintiff's allegations, because Plaintiff only told non-supervisory UAW employees about what was said to her and then asked those employees not to take any action in response to Foster's comments.

First, there is no dispute that Plaintiff declined to report any of Foster's alleged verbal harassment to a supervisor or manager until after the UAW learned of those allegations through the IME. SMF ¶ 16. And it bears repeating there were adequate reporting mechanisms available to her: Plaintiff could have reported her allegations to her Administrator; she could have reported them directly to Human Resources; and she could have filed a grievance, with or without the assistance of the Staff Council. SMF ¶ 8. Any one of these reporting mechanisms would have alerted UAW management of an ongoing problem, enabling it to address that problem; her failure to do so "weighs strongly against imposing liability on" UAW. *Hartleip v. McNeilab, Inc.*, 83 F.3d 767, 776 (6th Cir. 1996).

The UAW employees with whom Plaintiff did discuss Foster's comments— including Sandra Parker, Angela Blue, Anthony McNeil, and Darryl Bragg—were all non-supervisory UAW personnel on the same level of the organization as Plaintiff. PMG Dep. 54:17-55:16 (Blue); 72:2-10 (McNeil); 73:17-24 (Bragg); 74:1-12 (Parker). That some non-supervisory employees might have witnessed Foster's verbal harassment is insufficient to constitute notice to the Employer, at

least where there is no evidence that those employees reported the harassment to management. *See Cooper v. Bader & Sons Co.*, No. 338519, 2018 WL 2449129, at *5 (Mich. Ct. App. May 31, 2018) (affirming summary disposition on respondeat superior grounds even though "plaintiff presented some evidence suggesting that other employees may have observed some of [supervisor's] offensive behavior").

Second, the record is equally clear that Plaintiff asked her coworkers not to say anything about the alleged harassment to Foster or any UAW supervisory or managerial employee. *See, e.g.*, PMG Dep. 71:5-72:10 (Plaintiff told coworker McNeil not to talk about Foster's sexual comment); PMG Dep. Ex. 4; PMG Dep. 57:18-58:15 (Blue should not have reported Foster's statements that he was crazy about Plaintiff); 81:21-82:14 (Plaintiff never asked her Staff Council Committee Person Parker to file a sexual-harassment grievance on her behalf). And Plaintiff's coworkers were entitled to respect her requests for confidentiality, *Elezovic*, 697 N.W.2d at 861-63, but the fact that they did so prevented the UAW from learning of Foster's verbal harassment until it was independently reported through the IME.

In short, UAW did not know about these incidents, and the law is clear that the UAW cannot be held liable for failing to correct what it did not know about. *See, e.g.*, *Chambers v. Trettco, Inc.*, 624 N.W.2d 543, 544-45 (Mich. Ct. App. 2001) (directing verdict for employer where no one with supervisory responsibility knew of plaintiff's plight until she spoke with her normal supervisor after

24

offending temporary supervisor was no longer visiting plaintiff's workplace).

### B. Once UAW learned of the alleged harassment by Foster in March 2019, it took prompt and effective corrective action.

Notwithstanding Plaintiff's decision not to initiate an investigation in October 2018, the UAW eventually learned of Plaintiff's allegations against Foster when it received and reviewed the Shiener IME Report. SMF ¶ 29. Specifically, on March 14, 2019, Human Resources Director Siddiqi reviewed the report and forwarded it to the President's Office with a request to discuss. SMF ¶ 30. Siddiqi's email put in motion a series of corrective actions that collectively "served to prevent future harassment of the plaintiff." *Chambers*, 614 N.W.2d at 919:

- On or about March 25, UAW designated Shrock to conduct UAW's official investigation into the allegations contained in the IME Report. SMF ¶ 31.

- On or about April 2, Shrock interviewed Plaintiff, in the presence of Plaintiff's union representative, regarding the allegations in the IME Report. At the start of the interview, Shrock assured Plaintiff that the UAW does not accept any type of retaliation. SMF ¶ 33.

- On April 4, Shrock met with Plaintiff and TOP Department Director Joe Rioux and changed her reporting structure so that she would be reporting directly to Rioux, instead of Miguel Foster. SMF ¶ 35.

- On April 11, Shrock concluded his investigation into the allegations of harassment by Foster. He reported to Stone and UAW President Gary Jones that he

25

recommended sustaining certain of the allegations and recommended UAW discipline Foster. SMF ¶ 36.

- On April 16, 2019, Stone, Shrock, Rioux, and Siddiqi met with Foster and informed him that he was being placed on disciplinary layoff; that Plaintiff would no longer report to him; and that he was required to have another employee present if he had to meet with Plaintiff for any reason. SMF ¶ 37.

- On April 17, 2019, Shrock, Siddiqi, and Andrews met with Plaintiff and informed her that she would be reporting to George Hardy on a permanent basis; that she was to have no more individual interaction with Foster; and that she would be permitted to move her office if she chose. SMF ¶ 38.

In short, in the weeks after UAW learned of the Foster allegations, it initiated an investigation; changed Plaintiff's reporting structure on an interim basis; determined that some of Plaintiff's allegations occurred as alleged; suspended the harasser; permanently changed Plaintiff's reporting structure; and ensured Plaintiff would not have to meet with Foster alone. These corrective measures were reasonably designed to end Foster's harassment of Plaintiff. And they did so: Plaintiff neither suffered nor has alleged any sexually harassing behavior by Foster since UAW implemented its remedial measures. SMF ¶ 39; Compl. ¶¶ 55-64, 86-88, PageID.13-14, 17.

That is prompt and effective corrective action. *See, e.g., Rouhani v. Bronson*

26

*Battle Creek Hosp.*, No. 315121, 2014 WL 3512915, at *6-7 (Mich. Ct. App. July 15, 2014) (summary disposition where employer counseled harasser and ensured plaintiff that she would not have to report to harasser or meet alone with him again); *Carr v. Ford Motor Co.*, Nos. 273675, 274251, 2008 WL 1838595, at *6 (Mich. Ct. App. Apr. 24, 2008) (same where employer progressively disciplined harasser and plaintiff had no further interaction with harasser).

Finally, although Plaintiff might have wanted the employer to take some different set of actions, "the test is not whether the employer satisfied plaintiff's demands." *Rouhani*, 2014 WL 3512915 at *6-7. Rather, the question is whether the employer's actions "reasonably served to prevent future harassment of the plaintiff." *Chambers*, 614 N.W.2d at 919. There is no dispute that Plaintiff only saw Foster one time after UAW implemented its remedial actions and that no sexual harassment occurred on that occasion. PMG Dep. 196:3-17. And although Plaintiff arguably rejected the adequacy of the corrective measures by assuming medical disability status, her rejection does not demonstrate the inadequacy of those measures. *See Thornton v. Fed. Express Corp.*, 530 F.3d 451, 457 (6th Cir. 2008) (summary judgment for employer where plaintiff expressed dissatisfaction with investigation by remaining on medical leave until she was terminated); *Cooper*, 2018 WL 2449129, at * 5 (same where plaintiff resigned). In sum, the UAW's investigation and remedial actions were reasonably calculated to end the

harassment of Plaintiff; that is all that is required to entitle UAW to summary judgment on Plaintiff's ELCRA hostile-work-environment claim.

### III. UAW is entitled to summary judgment on Plaintiff's Title VII hostile-work-environment claim because it did not negligently fail to prevent harassment from taking place.

Like ELCRA, Title VII prohibits hostile-work-environment harassment. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 752 (1998). And although the elements of the Plaintiff's prima facie case are similar, *see Thornton*, 530 F.3d at 455, with respect to the fifth element—"that there is a basis for employer liability"—the analysis is different. Specifically, under Title VII, the standards for employer liability change depending on whether the harasser is the plaintiff's supervisor: "If the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions." *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013). If the harassing employee is the plaintiff's supervisor, however, the employer will be held to a higher standard and will need to establish an *Ellerth/Faragher* affirmative defense by showing that (1) "the employer exercised reasonable care to prevent and correct any harassing behavior," and (2) "that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided." *Id.*

Here, putting aside the first four elements of Plaintiff's prima facie case, UAW is entitled to summary judgment on Plaintiff's Title VII hostile-work-

environment claim because she has failed to establish a basis for Employer liability. Specifically, as set forth below, there is no genuine dispute that (A) Miguel Foster was not Plaintiff's supervisor and (B) UAW exercised reasonable care in preventing Plaintiff's harassment from taking place.

### A. Miguel Foster was not Plaintiff's supervisor.

As an initial matter, there is no genuine dispute that Miguel Foster was not Plaintiff's "supervisor" for Title VII liability purposes.[4] Under Title VII, "an employer may be vicariously liable for an employee's unlawful harassment only when the employer has empowered that employee to take tangible employment actions against the victim, *i.e.*, to effect a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Vance*, 570 U.S. at 431 (quoting *Ellerth*, 524 U.S. at 761). Under this standard, the putative supervisor's ability to direct the work of another employee or the putative supervisor's title are insufficient to show supervisory status. *See, e.g.*, *EEOC v. AutoZone, Inc.*, 692 F. App'x 280, 283 (6th Cir. 2017) (store manager's ability to

---

[4] In its Answer, UAW admitted that, at times, Miguel Foster was "a supervisor of Plaintiff." Answer, ECF No. 19 ¶ 6, PageID.76. That factual admission was consistent with the meaning of "supervisor" in "colloquial usage." *Vance*, 570 U.S. at 435. But it does not resolve the question since the *Vance* Court was perfectly clear that supervisory status "hinges not on formal job titles or 'paper descriptions,'" and UAW admitted none of the "specific facts of the working relationship." *Id.* at 449.

direct the work of the employees at his store and his title did not make him the

plaintiff's supervisor). Nor is the ability to make recommendations sufficient,

unless "the employer may be held to have effectively delegated the power to take

tangible employment actions to the employees on whose recommendations it

relies." *Vance*, 570 U.S. at 447; *AutoZone, Inc.*, 692 F. App'x at 283.

Here, there is no genuine dispute that Miguel Foster, the assistant director of

UAW's TOP department, did not have the authority to take the type of tangible

actions that are necessary for supervisory status under *Vance*. Most importantly,

the record is clear that Foster could not hire, fire, promote, discipline, reduce

Plaintiff's benefits, or reassign Plaintiff to significantly different responsibilities.

SMF ¶ 15. Indeed, Rioux and Hardy, *Foster's* supervisors, lacked the authority to

implement those types of tangible employment actions as to Plaintiff. Rioux Decl.

¶¶ 5-6; Hardy Decl. ¶ 7. At most, Plaintiff's own experience only shows that

assistant directors, like Foster, give out assignments, PMG Dep. 194:1-22 (after

being reassigned to report to Hardy as assistant director, Plaintiff would go to him

to receive her assignments), which is simply insufficient as a matter of law to turn

Foster into Plaintiff's supervisor for Title VII purposes, *see AutoZone, Inc.*, 692 F.

App'x at 283 (collecting cases).

It is equally clear that Plaintiff did not reasonably believe that Foster was her

"supervisor" as defined in *Vance*. There is no evidence in the record from which an

employee could conclude that a UAW assistant director had the capabilities identified in *Vance* as necessary for supervisory status. In addition, Plaintiff knew how many layers there were between the assistant directors like Foster and the UAW officers and top administrative assistants who could implement or effectively recommend the tangible employment decisions that make someone a supervisor. *See* PMG Dep. 35:1-8 (describing reporting structure). And Plaintiff knew exactly where Foster fell in this chain: as Plaintiff succinctly testified at deposition: Miguel Foster "was a peon." PMG Dep. 222:10-12.[5]

In short, there is no genuine dispute that Foster could not hire, fire, fail to promote, reduce benefits, or take other tangible employment actions that effect a significant change in the employment relationship. As a result, for this claim, UAW is held to the lesser standard of care applicable to coworker harassment.

### B. UAW was not negligent in controlling workplace conditions.

1.  <u>Miguel Foster</u>: Because Foster was Plaintiff's coworker, UAW can be held liable for his harassment only if Plaintiff establishes that the employer knew

---

[5] With respect to Kariem, although he was *a* supervisor, he was not *Plaintiff's* supervisor, which is what matters for purposes of vicarious liability. *See Autozone*, 692 F. App'x at 284 (immaterial that harasser could hire other employees because could not effect tangible employment actions for the employees he harassed).

As for Settles, it is unclear whether Plaintiff alleges that UAW is liable under Title VII for his harassment. *See* Compl. ¶ 140, PageID.25 (referring only to Foster's abuses and threats in Title VII Count). To the extent Plaintiff is alleging such, UAW is nevertheless entitled to summary judgment on Plaintiff's Title VII claim for the reasons set forth at *infra* Part IV.B and Part V.

or should have known of the harassment "and failed to implement prompt and

appropriate corrective action." *Zeller v. Canadian Nat'l Ry. Co.*, 666 F. App'x 517,

525–26 (6th Cir. 2016). Relevant evidence includes "that an employer did not

monitor the workplace, failed to respond to complaints, failed to provide a system

for registering complaints, or effectively discouraged complaints from being filed."

*Vance*, 570 U.S. at 448-49. The coworker liability standard under Title VII is

similar in application to the respondeat superior element under ELCRA. *See, e.g.*,

*Hamood v. Trinty Health Corp.*, No. 2:18-CV-13194, 2021 WL 735789, at *5

(E.D. Mich. Feb. 25, 2021) (Sixth Circuit reasoning under ECLRA applies to

employer liability for coworker harassment under Title VII).

Here, for essentially the same reasons that Plaintiff cannot establish

respondeat superior under ECLRA, she cannot, as matter of law, establish UAW's

negligence. Specifically, the undisputed evidence is that UAW maintained Anti-

Harassment Policies that provided multiple, alternative paths for reporting

complaints, including multiple options that enabled an employee to go around a

harassing supervisor. SMF ¶ 8. More importantly, the evidence is also undisputed

that Plaintiff failed to avail herself of those reporting mechanisms and actually

prevented her coworkers from raising these issues with UAW management. *See*

*supra* at 21-24; *see also Hartleip*, 83 F.3d at 776 (an employee's unreasonable

failure to take advantage of company's anti-harassment policy weighs against

imposing employer liability). Finally, there is no dispute that, once UAW learned

of the harassment allegations against Foster via the IME Report, it investigated,

disciplined the harasser, and took corrective action (including by changing

Plaintiff's reporting structure) designed to eliminate the possibility of harassment

going forward. *See supra* at 25-28; *Chaney v. Haworth, Inc.*, 802 F. App'x 1006,

1010 (6th Cir. 2020) ("[a] response is adequate if it is reasonably calculated to end

the harassment.") (citation omitted); *Fleenor v. Hewitt Soap Co.*, 81 F.3d 48, 50–

51 (6th Cir. 1996) (company's actions were sufficient where company reprimanded

the harasser in month following harassment and harassment stopped). That is what

Title VII requires when an employer learns of coworker harassment.

Indeed, although it is not here held to the higher standard applicable to

supervisory harassment, UAW would be able to establish an *Ellerth/Faragher*

affirmative defense because (i) it exercised reasonable care to prevent harassment

by promulgating the UAW Anti-Harassment Policies, and (ii) it both investigated

and effectively remedied harassment that Plaintiff unreasonably failed to report.

*See AutoZone, Inc.*, 692 F. App'x at 286 (no employer liability where employees

had reporting options but unreasonably waited several months to report harassment

or first reported it once employer had already started an investigation). Thus, even

if the Court concluded UAW should be held to the supervisory standard, UAW

would be entitled to summary judgment on Plaintiff's Title VII claim stemming

from harassment by Miguel Foster.

2. <u>Gerald Kariem</u>: The analysis is the same—albeit easier—with respect to the allegations of harassment by Gerald Kariem. Specifically, Plaintiff *never* informed UAW that Kariem had allegedly harassed her. SMF ¶ 47. And Plaintiff testified that "[e]very time Kar[i]em would say something to [her]," he would either whisper it or no one would be around. PMG Dep. 220:20-221:10. In short, under the coworker liability standard, the complete absence of UAW knowledge regarding Kariem's alleged harassment dooms her attempt to hold UAW liable for it. *Hartleip*, 83 F.3d at 776-77 (summary judgment for employer because employee failed to tell employer about harassment until months after it ceased).

*          *          *

The fundamental flaw with Plaintiff's Title VII hostile-work-environment claim is the same as the ELCRA claim: she did not tell UAW managerial or supervisory staff about the harassment, and, when the UAW independently learned of her allegations, it investigated and took appropriate corrective measures. That is all that is required, so UAW is entitled to summary judgment on Plaintiff's Title VII hostile-work-environment claim.

**IV. In the alternative to Parts II and III, UAW is entitled to partial summary judgment on Plaintiff's hostile-work-environment claims to the extent those claims are based on conduct by Settles.**

In the alternative to UAW's arguments in Parts II and III that Plaintiff's

34

hostile-work-environment claims should be dismissed in their entirety, UAW is entitled to partial summary judgment to the extent liability is premised on any alleged harassment by Jimmy Settles. As explained below, (A) liability for such a claim under both ELCRA and Title VII is barred by the applicable statutes of limitation, and (B) the Court cannot consider those claims under Title VII because Plaintiff failed to exhaust administrative remedies.

### A. UAW's liability for alleged harassment committed by Settles is barred under the statutes of limitations.

Because the alleged sexual misconduct by Settles all occurred between 2003 and 2014, recovery for that misconduct is barred by the statutes of limitations. In Michigan, charges of sexual harassment under Title VII must be filed within 300 days of the last incident of harassment. *See* 42 U.S.C. § 2000e-5(e)(1). Under ELCRA, employees have three years from the last incident of harassment to file a civil action, a period which is not tolled by the filing of administrative complaint. MCL § 600.5805(2); *Mair v. Consumers Power Co.*, 348 N.W.2d 256, 258, 261 (Mich. 1984).

Here, by Plaintiff's estimation, the latest possible date on which the last incident of sexual harassment by Settles occurred was in May 2014. SMF ¶ 43. That date makes sense because, as the record establishes, Plaintiff stopped working for Settles in about June 2014. PMG Dep. 39:13-40:3. Given that date, Plaintiff was required by Title VII to file a charge with the EEOC by February 24, 2015,

and was required by ELCRA to file a lawsuit by May 1, 2017. She took those actions on July 2, 2019, and May 27, 2020, respectively, SMF ¶ 41 & Compl. at 31, PageID.32, well outside of both applicable statutes of limitation. As such, any UAW liability for the alleged harassment by Settles is barred. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 118 (2002) (barring recovery for actions that occurred before the EEOC filing period and bore no relation to acts within the filing period); *King v. Acosta Sales & Mktg., Inc.*, 678 F.3d 470, 472 (7th Cir. 2012) (prior serious incidents of harassment were unconnected to filing period acts where they occurred two years before the employee filed her charge and were committed by employee who had since left the company); *Schmitt v. Solvay Pharms., Inc.*, No. 06-11791, 2007 WL 3173323, at *2 (E.D. Mich. Oct. 29, 2007) ("ELCRA does not support a continuing violations theory of liability for time-barred conduct").

To be sure, Plaintiff makes one allegation involving Settles that occurred within the statute of limitations: the May 2019 phone call Settles made after he had retired from UAW. But there is no dispute that nothing in the phone call was sexual in nature, SMF ¶ 44, or that anything in the call could be construed as harassment on the basis of sex. *Cf. Williams v. GMC*, 187 F.3d 553, 565 (6th Cir.1999). In particular, although Settles apparently swore during the phone call, Bellotti Decl. Ex. D, the record establishes that Settles swore frequently, to both

men and women. PMG Dep. 254:11-12; 255:24-256:13 (Settles's "word was MF" and he would address people as MFs). The discrimination statutes offer no protection from the "equal opportunity curser." *Baldwin v. Blue Cross/Blue Shield of Ala.*, 480 F.3d 1287, 1302 (11th Cir. 2007). In any event, UAW cannot be liable for the May 2019 phone call because there is no dispute that Settles—having retired the previous year—was not then an agent of UAW, Plaintiff was not working at the time, and Settles called Plaintiff on her personal cell phone. PMG Dep. 275:9-18. That is not *workplace* harassment.

### B. Plaintiff's failure to exhaust the Settles allegations precludes UAW's liability under Title VII.

In addition to the statute-of-limitations problem, Plaintiff cannot bring her Title VII hostile-work-environment claim based on allegations of harassment by Settles because she never exhausted administrative remedies as to those claims. "It is well settled that federal courts do not have subject matter jurisdiction to hear Title VII claims unless the claimant explicitly files the claim in an EEOC charge or the claim can be reasonably expected to grow out of the EEOC charge." *Strouss v. Mich. Dep't of Corr.*, 250 F.3d 336, 342 (6th Cir. 2001). Here, Plaintiff's EEOC charge made no mention of Settles and was instead limited to allegations made against Foster. SMF ¶ 41. Although, after she read UAW's response, Plaintiff attempted to further support her charge against Foster by submitting additional information alleging harassment by Settles, she never amended the charge to put

37

UAW on notice of Settles's harassment. And it is undisputed that UAW never received a copy of those allegations or an opportunity to respond. SMF ¶ 42.

As such, those allegations cannot reasonably be expected to grow out of her EEOC charge, and the Court cannot consider them. *See, e.g.*, *Cantu v. Mich. Dep't of Corr.*, 653 F. Supp. 2d 726, 737, 746 (E.D. Mich. 2009) (no exhaustion as to incidents of harassment predating earliest date in EEOC charge); *see also Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004) (the "purpose of the [exhaustion] requirement is to trigger an investigation, which gives notice to the alleged wrongdoer of its potential liability and enables the EEOC to initiate conciliation procedures"). Because Plaintiff failed to identify any alleged harassment by Settles in her charge, she never triggered an investigation, put the UAW on notice, or initiated conciliation. In short, she failed to exhaust administrative remedies.

**V. In the alternative to Parts II and III, UAW is entitled to partial summary judgment on Plaintiff's hostile-work-environment claims to the extent those claims are based on conduct by Kariem.**

In the alternative to Parts II and III, UAW is entitled to partial summary judgment to the extent liability is premised on alleged harassment by Kariem. As shown below, (A) that conduct is not severe or pervasive enough to constitute a hostile work environment, and (B) the Court is without jurisdiction to hear those claims under Title VII because Plaintiff failed to exhaust administrative remedies.

### A. Kariem's alleged conduct was neither severe nor pervasive.

As explained more fully in the separate motion for summary judgment filed contemporaneously by Gerald Kariem, the allegations of harassment made against him are, objectively, neither severe enough nor pervasive enough to constitute actionable discrimination under ELCRA or Title VII. Gerald Kariem's Mem. Supp. Summ. J. ("Kariem MSJ"), at Part II. To summarize those arguments here: (1) Kariem is alleged to have made three sexually explicit comments over at least a five-year period, Complaint ¶¶ 96-99, 101, PageID.18-19, and to have given Plaintiff the non-sexual nickname, "cousin," *id.* ¶ 100, PageID.19; (2) because they worked in different cities, Plaintiff and Kariem interacted with each other only infrequently at conferences and conventions; (3) Plaintiff does not allege that Kariem ever made offensive physical contact with Plaintiff; and (4) Kariem was nowhere in Plaintiff's supervisory chain. *See* Kariem MSJ at 15-20.

In these circumstances, no reasonable jury could find that Kariem's harassment was so severe or pervasive that it "'alter[ed] the conditions of the victim's employment and create[d] an abusive working environment.'" *Nathan*, 992 F.3d at 567 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). Finally, because there is "no relation" between the allegations against Kariem and the allegations against Foster, Complaint ¶¶ 96-101, PageID.18-19, the Kariem allegations are "not part of the same actionable hostile environment claim."

39

*Morgan*, 536 U.S. at 118. Therefore, UAW is entitled to partial summary judgment on Plaintiff's separate hostile-work-environment claim based on alleged conduct by Kariem.

### B. Plaintiff did not exhaust administrative remedies with respect to her Kariem allegations.

Finally, for the same reasons that the Court cannot consider the Settles allegations, it cannot consider the allegations against Kariem for purposes of Plaintiff's Title VII hostile-work-environment claims. Specifically, Plaintiff has not exhausted administrative remedies because her EEOC charge failed to mention any alleged misconduct by Kariem. *See* supra, Part IV.B; SMF ¶ 41. UAW is likewise entitled to partial summary judgment on those claims.

## CONCLUSION

For the foregoing reasons, UAW is entitled to summary judgment on Plaintiff's Title VII and ELCRA retaliation claims, and the case should be dismissed. In the alternative, and only to the extent summary judgment is not granted in its entirety, UAW is entitled to partial summary judgment on Plaintiff's Title VII and ELCRA hostile-work-environment claims to the extent those claims are based on allegations of harassment by Kariem or Settles.

Respectfully submitted:

s/ *Abigail V. Carter*
Abigail V. Carter (NY 4022315)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 31, 2021, I caused the foregoing brief to be electronically filed with the Clerk of the Court using the ECF system which will send notification of filing to all participants in the CM/ECF system.

<u>s/ *Adam Bellotti*</u>
Adam Bellotti (DC 1020169)
BREDHOFF & KAISER, PLLC

## CERTIFICATE OF COMPLIANCE

I, Abigail V. Carter, certify that this document complies with Local Rule 5.1(a),

including: double-spaced (except for quoted materials and footnotes); at least one-

inch margins on the top, sides, and bottom; consecutive page numbering; and type

size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for

non-proportional fonts) or 14 point (for proportional fonts). I also certify that it is

the appropriate length, Local Rule 7.1(d)(3), as extended by the Court in its August

2, 2021 Order. Dkt. No. 43, PageID.263.

*/s/ Abigail V. Carter*
Abigail V. Carter (NY 4022315)
BREDHOFF & KAISER, P.L.L.C.


Dated: August 31, 2021

2